UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRADLEY L. BROWN, II, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 4:15CV01539 ERW |
| | ) |
| IAN WALLACE, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Bradley L. Brown, II's *Pro Se* Petition under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* by a Person in State Custody [1].

**I.     BACKGROUND**

Petitioner Bradley L. Brown, II ("Petitioner") was convicted by jury of one count of domestic assault in the first degree, one count of armed criminal action, and one count of felony resisting arrest. The Circuit Court of Stoddard County entered judgment notwithstanding the verdict on the resisting arrest count, finding there was inadequate proof Petitioner knew law enforcement was trying to effectuate an arrest. Petitioner was sentenced as a prior and persistent offender to serve a term of twenty years imprisonment for the domestic assault conviction and ten years imprisonment for the armed criminal action conviction, the sentences to be served consecutively. Petitioner filed a direct appeal and his convictions were affirmed. Petitioner, then, filed a timely motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. The post-conviction motion court ("the motion court") denied Petitioner's post-conviction relief motion ("PCR motion"). Petitioner filed an appeal of the denial of post-conviction relief and the

1

motion court's judgment was affirmed. On October 6, 2015, Petitioner filed the instant petition for writ of habeas corpus under 28 U.S.C. § 2254.

The Missouri Court of Appeals, Southern District, described the facts of Petitioner's convictions as follows:

> Victim and Defendant started dating in December 2007. In late January or early February 2008, they leased a house . . . On March 7, 2008, Victim returned home from work and was upset to find Defendant drunk when he was supposed to have been looking for a job. She left and went out with a friend to a bar. Victim spent the night at her friend's house and returned home the following morning. Defendant was there, and they went about their day as usual.
>
> Early that evening, Defendant and Victim joined others at a mutual friend's house, where they planned to watch a UFC fight. At some point in the evening, the women went to the store to buy liquor and margarita mix while the men remained at the house. While they were gone, the conversation among the men turned to pocket knives. Defendant pulled out a knife to show the other men and told them to feel how sharp the blade was, saying that he had just had it sharpened. The knife was described as an "old-timer fishing knife" with a straight blade about four inches long and a brown handle. The women returned from the store and made some margaritas, and the men watched the fight. Defendant was on his telephone from time to time and at one point, he asked the Victim to take him to his cousin's house, but she refused and did not want to leave. They eventually left around 10:00 and returned home because Defendant wanted to grill steaks he had set out to thaw.
>
> At home, Victim made a salad and set the table for Defendant while he went outside to grill. Victim was not hungry, and she went to bed. When Defendant came back inside with the steaks, he became "aggravated" that Victim did not stay up to eat with him, and he told Victim that she was rude and disrespectful. Defendant got his pillow, told Victim that he was sleeping on the couch, and slammed the door on his way out of the bedroom. Soon, Victim heard a crash and got up to discover that Defendant had broken a plate. An argument ensued and escalated into a physical struggle. Victim wanted Defendant to leave, but when he refused, she went into the bedroom to get her purse so she could leave. Defendant came after her, and as she tried to hold the bedroom door closed, Defendant tried to kick it in. When Victim let go of the door to retrieve her purse, Defendant grabbed her and threw her out of the bedroom. Victim picked up a telephone and told Defendant she was calling the police; he grabbed the telephone and threw it into the kitchen. Victim tried to reach the front door, but Defendant caught her by her hair and threw her to the floor. As Victim fought and pleaded with him to stop, Defendant told Victim that he loved her, did not want her to leave, and the only way she "was going to leave him was in a body bag."
>
> Defendant produced a knife and started stabbing Victim. As she spun around and struggled to escape, Defendant continued stabbing at her back, neck,

shoulders, head, and chest. When he stabbed her in the neck, she felt blood "shoot out[,]" and she became "deathly sick." She closed her eyes and exhaled, and Defendant got up, locked the front door, and walked into the bathroom. When Victim heard running water, she ran out of the house to the home next door and began pounding on the front door yelling for the neighbor to call 911.

At the house next door, the neighbor peeked outside when she heard someone beating on her door and saw Victim standing on her front porch with blood all over her. She called for help and was still talking on the phone when she saw "some figure of some kind" pull Victim away. Victim had heard the front door of her house open, and when she saw Defendant approaching, she wrapped her arms around a porch column to prevent him from dragging her away. Defendant succeeding in pulling her off the porch and carried her across the yard, but he let her go and ran back into their house when he saw a patrol car coming down the street. Victim saw a patrol car pass by their home, and she moved toward the street to get the attention of the officer.

City of Chaffee police officer Jason Hammontree was responding to a domestic disturbance call in the area . . . when he found Victim lying in the street with multiple stab wounds and covered in blood. She told him that her boyfriend, Defendant, had stabbed her. Defendant was known to Hammontree, and when additional officers arrived, Hammontree entered the house where Defendant and Victim lived to search for Defendant. Hammontree did not find Defendant inside the house, but he observed blood on a column on the front porch and door, and inside, he found two spots of blood on the living room carpet, a broken telephone, and blood on the back door and door handle. He further noted that the kitchen was in disarray, with broken plates, utensils, and food on the floor. When he returned to the scene outside, a by-stander pointed Hammontree in the direction of another officer who was in pursuit of Defendant.

Hammontree joined in the chase, which ended when they saw Defendant enter an apartment at . . . When the officers reached the door of the apartment and identified themselves as police officers, a woman identified as Defendant's mother opened the door. As the officers entered the apartment, they observed Defendant with blood on his hands and clothing, standing in the kitchen. Defendant was arrested and transported to jail. Two searches of the area in and around the house and along the route Defendant ran to reach his mother's apartment failed to turn up the knife that was used in the assault.

Victim was transported by ambulance to the emergency room and subsequently underwent surgery to repair her wounds. It was determined that she had sustained eleven knife wounds. One such wound entered her chest and punctured her right lung, and one on her neck, which came close to cutting an artery or the airway, severed her thyroid gland and hit her esophagus. The trauma surgeon who treated Victim testified that this wound went almost all the way through her neck. Further, there were multiple wounds to her shoulder, neck,

back, and head, and a deep laceration to her left thumb that penetrated to the bone and cut a sensory nerve.[1]

ECF No. 8-6, pgs. 2-5.

## II. STANDARD

"A state prisoner who believes that he is incarcerated in violation of the Constitution or laws of the United States may file a petition for writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254." *Osborne v. Purkett*, 411 F.3d 911, 914 (8th Cir. 2005). In order for a federal court to grant an application for a writ of habeas corpus brought by a person in custody by order of a state court, the petitioner must show that the state court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). A determination of a factual issue made by a state court is presumed to be correct unless the petitioner successfully rebuts the presumption of correctness by clear and convincing evidence. *Id.* at § 2254(e)(1).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the] precedent.'" *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (citing *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000)). An unreasonable application of clearly established Supreme Court precedent is found where the state court identifies the correct governing legal principle but unreasonably applies that principle

---

[1] These facts are taken directly from the Court of Appeals Memorandum affirming Petitioner's conviction on direct appeal. A state court's determination of a factual issue shall be presumed to be correct. 28 U.S.C. § 2254(e).

4

to the facts of the case. *Ryan v. Clark*, 387 F.3d 785, 790 (8th Cir. 2004). Finally, a state court decision may be considered an unreasonable determination of the facts "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Id.*

## III. DISCUSSION

Petitioner asserts the following ten claims in his motion to vacate his convictions: (1) the trial court abused its discretion in allowing Officer Hammontree's testimony about Petitioner's belligerence at the jail after being arrested; (2) the trial court abused its discretion in overruling Petitioner's objection to the prosecutor's questions about Petitioner's prior convictions; (3) the trial court plainly erred in overruling Petitioner's objection to the prosecutor's questions about Petitioner's prior convictions; (4) trial counsel was ineffective because they failed to impeach Officer Hammontree with prior inconsistent statements and omissions; (5) trial counsel was ineffective because they failed to impeach witness Ben Rutherford; (6) trial counsel was ineffective because they failed to impeach witness Chris Wilburn; (7) trial counsel was ineffective because they failed to object to argumentative and improper questioning of Petitioner by the prosecutor during cross-examination; (8) trial counsel was ineffective because they failed to call Lela "Tori" Nalley as a witness in support of Petitioner; (9) appellate counsel was ineffective because she failed to raise in the appellate brief the trial court's error in allowing Dr. Silliman to testify about the victim's mental condition upon being admitted to the hospital and whether the wounds inflicted were defensive or self-inflicted; and (10) PCR counsel was ineffective for failing to raise all of Petitioner's *pro se* claims in the amended PCR motion. The Court will address each claim as follows.

    A.    *Procedurally Defaulted Claims*

5

Claims 5, 6, 8, and 9 of Petitioner's motion are procedurally defaulted and must be dismissed. Petitioner must raise each claim presented in his federal habeas petition, first, in state court proceedings. *Interiano v. Dormire*, 471 F.3d 854, 856 (8th Cir. 2006). Claims not presented in state court proceedings, and for which there is no remaining state court remedy, are defaulted. *Id*. To overcome a procedural default, a petitioner must show cause for not presenting the claim in state court, and prejudice from the failure, or a fundamental miscarriage of justice. *Storey v. Roper*, 603 F.3d 507, 523 (8th Cir. 2010). Cause for a procedural default ordinarily occurs when the petitioner can show "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). In order to establish a fundamental miscarriage of justice, a petitioner must present "new reliable evidence that he was innocent of the crime of which he was convicted." *Storey*, 603 F.3d at 524.

Claims 5, 6, and 8, Petitioner raised in his PCR motion, but failed to raise in his PCR appeal. Therefore, they are procedurally defaulted and must be dismissed. *See Storey*, 603 F.3d at 523 ("Storey did not appeal this finding in his state post-conviction appeal, and it is therefore procedurally defaulted.").

Claim 9 is partially procedurally defaulted. In Claim 9, Petitioner alleges he was denied effective assistance of appellate counsel when his appellate counsel failed to raise and brief the trial court's error in permitting Dr. Silliman to testify about the victim's mental condition after being admitted to the hospital and the "defensive wounds" versus "self-inflicted wounds" on the victim. Petitioner raised this exact claim in his PCR motion. However, in his PCR appeal, he only raised the second part of the claim about the type of wounds the victim sustained. Therefore, the first part of his claim regarding Dr. Silliman's testimony about the victim's mental

condition is procedurally defaulted and must be dismissed. The Court will address the remainder of Claim 9, below.

Claims 5, 6, 8, and part of 9 would not otherwise be dismissed if Petitioner could show cause and prejudice for not presenting the claims in state court or if he can show existence of a fundamental miscarriage of justice. Petitioner cannot establish either option. He has presented no new evidence he is innocent of the crime of which he was convicted and he has not presented any external factors that impeded his ability to present his claims to the state court. Petitioner has not overcome the procedural default of these claims and they will be dismissed.

  B. *Non-Cognizable Claims – Claims 1, 2, 3, and 10*

    1. Claims 1, 2, and 3

Claims 1, 2, 3, and 10 of Petitioner's Motion are not cognizable in federal court. The United States Supreme Court has held "federal habeas corpus relief does not lie for errors of state law" and "it is not [the] province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) and citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984)). Because the admission or exclusion of evidence is primarily a question of state law, an evidentiary determination rarely gives rise to a federal question reviewable in a habeas petition. *Scott v. Jones*, 915 F.2d 1188, 1190-91 (8th Cir. 1990); *Johnson v. Steele*, No. 4:11CV01022 SNLJ, 2014 WL 4627174, at *7 (E.D. Mo. Sept. 12, 2014). Federal courts "may not review evidentiary rulings of state courts unless they implicate federal constitutional rights." *Evans v. Luebbers*, 371 F.3d 438, 443 (8th Cir. 2004) (citing *Estelle*, 502 U.S. at 68).

"A state court's evidentiary ruling is a matter of state law, and we may examine the ruling in a habeas petition only to determine whether the asserted error denied due process."

7

*Bailey v. Lockhart*, 46 F.3d 49, 50 (8th Cir. 1995). "A state court's evidentiary rulings can form the basis for habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." *Osborne v. Purkett*, 411 F.3d 911, 917 (8th Cir. 2005) (quoting *Parker v. Bowersox*, 94 F.3d 458, 460 (8th Cir. 1996)). To constitute a due process violation, an evidentiary mistake must be "so egregious that [it] fatally infected the proceedings and rendered [Petitioner's] entire trial fundamentally unfair." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995).

Claims 1, 2, and 3 challenge the trial court's decision to admit testimony or allow cross-examination, which are state law questions. Petitioner has not alleged the trial court's rulings were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive Petitioner of due process. Claims 1, 2, and 3 will be dismissed.

      2.    Claim 10

In claim 10, Petitioner asserts he was denied effective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution because his PCR counsel did not raise and brief several issues in Petitioner's Amended PCR motion that Petitioner raised in his *pro se* PCR motion. There is no federal constitutional right to post-conviction counsel. *Cox v. Burger*, 398 F.3d 1025, 1030 (8th Cir. 2005). Thus, it is not a ground for habeas relief. *Id. See also* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). Because Petitioner's claim is not cognizable in federal court, it will be dismissed.

    C.    *Claims Entitled to Deference – Claims 4, 7, and 9*

Claims 4, 7, and part of 9, Petitioner raised in each of his state court proceedings. To gain federal habeas relief on these claims, Petitioner must show the state court's decisions on these claims were contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision that was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(1)-(2).

1. Claim 4

In claim 4, Petitioner asserts he was denied effective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution when his counsel failed to impeach Officer Hammontree with his prior inconsistent statements and omissions. According to Petitioner, any reasonably competent counsel would have impeached Officer Hammontree with his prior inconsistent statements, because the statements implicated the quality of the police investigation. Petitioner alleges his counsel should have impeached Officer Hammontree in regards to: (1) his mishandling of Petitioner's clothing with blood on it, (2) his failure to lock the residence where the attack occurred upon his departure, (3) his discrepancy of when he booked Petitioner into jail, either before or after photographs were taken at the residence, and (4) whether he entered the residence as standard procedure or to secure it. This is the same claim he raised in his PCR motion and in his PCR appeal.

The motion court denied Petitioner's PCR motion for the following reasons:

> In this case, Movant has been unable to prove either prong of the Strickland test. First, Movant failed to show that his counsel's actions fell below the standard of a reasonable competent attorney. In the suppression hearing, Officer Hammontree stated that Movant's clothing was placed into evidence, and at trial was shown photographs of the clothing whereby each exhibit was positively identified by Officer Hammontree as a true and accurate depiction of the clothing on the night Movant was arrested. Secondly, the securing of the residence was in efforts to maintain the safety of the officer and the victim from further violence from the attacker. On Movant's third point, Officer Hammontree did not book Movant when he was first taken to the jail, Movant was only logged into the jail and

9

dressed in a jail uniform. As to Movant's fourth point, Officer Hammontree's entry into the residence, even if not covered by the victim's consent, falls squarely into the warrant exception of exigent circumstances, whereby the victim's attacker was named, and the victim was covered in blood, which was also on the outside of the residence. In effecting a lawful arrest, the officer may also conduct a protective sweep of the premises to discover the presence of other people who might be security risks. This also accords the officer the status to seize objects on the premises which fall in his plan view. . .

Even if this Court were to find that counsel did not exercise the customary skill and diligence that a reasonably competent attorney would have exercised in similar circumstances, Movant would still fail in the second prong of the Strickland test as the prosecution's evidence against Movant was overwhelming. Prejudice exists only where trial counsel's acts or failures to act are outcome determinative. The Movant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Here, the evidence of Movant's guilt was overwhelming. In this case, Movant was allowed to testify and to be cross-examined as to Movant's version of the accusations. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Since Movant is unable to meet either prong of the Strickland test, Movant is not entitled to post-conviction relief pertaining to this point.

ECF No. 8-8, pgs. 79, 81-82 (internal citations omitted). Similarly, the appellate court, in affirming the PCR motion court's denial of Petitioner's claims, held:

In his amended petition for post-conviction relief, Movant claimed trial counsel was ineffective for failing to impeach Officer Hammontree regarding the collection of Movant's clothes after his arrest and the search of Movant's residence. At the post-conviction hearing, trial counsel testified that the defense theory of the case was to prove Victim was lying and that, instead of Movant stabbing Victim, "[Victim] stabbed herself." In support of that theory, she called Movant and a pharmacologist. Trial counsel testified she did not cross-examine Officer Hammontree regarding how Movant's clothes were processed after Movant's arrest because under the defense theory of the case, Victim's blood would still have been on Movant's clothes. Trial counsel further explained she did not think there was much in Officer Hammontree's search of the residence that helped the defense theory since even under the Movant's theory there had been a struggle in the home. Trial counsel did not think Officer Hammontree's testimony "necessarily helped or hurt the case." This evidence showed Movant failed to meet his burden of proving trial counsel was ineffective for failin to impeach Officer Hammontree. It was reasonable to limit the cross examination of Officer Hammontree.

> Generally, the mere failure to impeach a witness does not entitle a movant to post-conviction relief. That is, to establish ineffective assistance of counsel's failure to impeach a witness, the movant must show that the impeachment of the witness would have provided the defendant a viable defense or otherwise changed the outcome of the trial. Missouri courts have frequently found that trial counsel were not ineffective for failing to impeach witnesses with their minor inconsistencies.
>
> The trial court did not clearly err when it found trial counsel was not ineffective for failing to further impeach Officer Hammontree.

ECF No. 8-11, pgs. 4-5 (internal citations omitted). The PCR motion court and the appellate court correctly applied federal law in denying Petitioner's claim for ineffective assistance of counsel. In order to establish ineffective assistance of counsel, an individual must show counsel made an unreasonable error and the error prejudiced the defense, meaning there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 688 (1984). The inconsistencies Petitioner raises are minor and a failure to impeach with these inconsistencies does not constitute ineffective assistance of counsel. Furthermore, Petitioner cannot establish he was prejudiced by his counsel's failure to impeach Officer Hammontree with these inconsistencies. The state courts' decisions are entitled to deference. Therefore, this claim will be denied.

2. Claim 7

In claim 7, Petitioner asserts he was denied effective assistance of counsel in violation of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution, because his trial counsel failed to object to allegedly argumentative and improper questioning of Petitioner by the prosecutor on cross-examination of Petitioner and allegedly improper argument made by the prosecutor during closing arguments. Specifically, Petitioner claims his counsel should have objected when "During its examination of Petitioner, the State asked Petitioner whether he 'saw all the pictures of Nancy's wounds,' 'saw all the reports,' and 'set here and listened to all the

11

testimony' so that he might 'know just how to make your story fit what the evidence says.'" This claim was raised in both Petitioner's PCR motion and appeal of the denial of his PCR motion.

The PCR motion court denied Petitioner's claim and stated:

On Movant's point as to objectionable questions of the Movant as to the pictures, the trial transcript shows that Movant opened the door to the issue when responding to the State's questions as follows:

> Q: Now, where else did she stab herself?
>
> A. To the pictures I seen, the shoulder, her arm, her neck, her face.

Further elaboration was made into viewing of such pictures, and other relevant evidence. Movant was allowed to testify and to be cross-examined as to Movant's versions of the accusations.

ECF No. 8-8, pg. 81. The appellate court affirmed the motion court's ruling, finding:

In his final point, Movant argues the motion court clearly erred in denying Movant's claim that trial counsel was ineffective for failing to object to (1) the prosecutor's cross-examination of Movant suggesting Movant was lying because he tailored his testimony to the evidence and (2) the prosecutor's closing argument suggested Movant was lying because he tailored his testimony to the evidence. This claim is without merit because the prosecutor's questions and arguments were permissible comments on Movant's credibility as a witness.

Ineffective assistance of counsel is rarely found in cases of a failure to object. Furthermore, appellate courts 'will no deem counsel ineffective for failing to object to admissible evidence.'

Here, the questions were permissible because they bore on Movant's credibility. When a defendant chooses to testify, "he is subject to cross-examination impeaching his credibility just like any other witness." "Anything that has the legitimate tendency of throwing light on the accuracy, truthfulness, and sincerity of a witness is proper for determining the credibility of the witness." In fact, the United States Supreme Court has implied that such cross-examination is permissible.

In the present case, Movant took the stand and testified in his own defense. Thus, he put his credibility at issue. During the state's cross-examination of Movant, the following exchange occurred:

> Q    Now, where else did [Victim] stab herself?
>
> A    To the pictures I seen, the shoulder, her arm, her neck, her face.

12

| | | |
|---|---|---|
| Q | | Okay. You brought up something good there. You saw pictures of her injuries? |
| A | | I did yesterday on the wall there. |
| Q | | You seen them before yesterday, though? |
| A | | Yes, I have. |
| Q | | In fact, you've seen all the reports in this case, correct? |
| A | | Yes, ma'am. |
| Q | | Seen all the evidence? |
| A | | Yes, ma'am. |
| Q | | Know just how to make your story fit what the evidence says? |
| A | | No, ma'am. |

At the evidentiary hearing regarding the post-conviction motion, trial counsel explained she did not object to these questions because she believed there was a case which held those arguments were not objectionable. Questions such as those at issue here, suggesting ways Movant could have fabricated his testimony, were permissible to help the jury evaluate Movant's credibility. The motion court did not clearly err in finding trial counsel was not ineffective for failing to object to these questions.

Generally speaking, "objections during closing argument are considered a function of trial strategy." "The failure to object during closing argument only results in ineffective assistance of counsel if it prejudices the accused and deprives him of a fair trial." Furthermore, "the alleged improper argument must be considered in the context of the trial as a whole," and "counsel will not be found ineffective for failing to make non-meritorious objections.

This Court has specifically held it is permissible for a prosecutor to argue the defendant's testimony is not credible because the defendant has had the opportunity to listen to all the evidence and tailor the testimony to the facts presented. Such a comment is just an evaluation of the defendant's credibility from the State's viewpoint. Here, as in *Norville*, the prosecutor's comment was simply a comment on Movant's credibility.

Movant's argument in support of his conclusion to the contrary primarily rests on *Griffin v. California*, 380 U.S. 609 (1965), which holds that a prosecutor may not comment in closing argument on a defendant's failure to testify, and the assertion that the questions and argument impugned Movant's right to discovery and to confront the witnesses against him. This argument has been rejected by the United

13

> States Supreme Court. In *Portuondo*, 529 U.S. at 63, the Court held that an argument stating "the defendant had the opportunity to hear all other witnesses testify and to tailor his testimony accordingly" did not violate the defendant's rights to be present at trial, to confront the witnesses against him, or to testify on his own behalf.
>
> Trial counsel was not ineffective for failing to object because the prosecutor's questions and argument were not improper. Movant's third point is denied.

ECF No. 8-11, pgs. 9-13 (internal citations omitted).

The PCR motion court and the appellate court correctly applied federal law in denying Petitioner's claim for ineffective assistance of counsel. "Allowing comment upon the fact that a defendant's presence in the courtroom provides him a unique opportunity to tailor his testimony is appropriate – and indeed, given the inability to sequester the defendant, sometimes essential – to the central function of the trial, which is to discover the truth." *Portuondo v. Agard*, 529 U.S. 61, 73 (2000). Petitioner's counsel was not ineffective for not raising a non-meritorious objection. Petitioner cannot establish his counsel was ineffective or that he was prejudiced by her ineffectiveness. The state courts' decisions are entitled to deference. Therefore, this claim will be denied.

   3.  Claim 9

In claim 9, Petitioner asserts he was denied effective assistance of counsel in violation of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution when his appellate counsel failed to raise and brief in his appeal the trial court's errors in permitting Dr. Silliman to testify about the victim's mental condition after being admitted to the hospital and the defensive wounds she endured. As stated *supra*, the first part of Petitioner's claim is procedurally defaulted because he did not raise the issue of his appellate counsel's failure to raise on appeal Dr. Silliman's testimony about the victim's mental condition in his PCR appeal. However, the

remainder of the claim, regarding Dr. Silliman's testimony about the victim's defensive wounds, was raised in his PCR motion and in his PCR appeal; thus, it is not procedurally defaulted.

The PCR motion court denied Petitioner's claim and stated:

> Movant's averment as to appellate counsel's ineffective assistance of counsel for failing to raise objections at appeal would not have changed the outcome of the appellate court's decision . . . Movant has also averred that the topic of whether Dr. Silliman was allowed to testify as to the type of wound that [the victim] received, i.e. defensive versus self-induced, should have been raised at appeal via trial counsel's objection at trial. The trial court allowed this testimony from Dr. Silliman as long as the proper foundation was met. A trial court has broad discretion to admit or exclude evidence. Appellate counsel is not required to raise every single objection at appeal. The appellate court has opportunity to review the trial transcript. Under plain error review, an appellate court "should first examine whether the claim of plain error is one that, on its face, establishes substantial grounds for believing that manifest injustice or miscarriage of justice occurred." Once plain error is facially established, an appellate court should then "review the claim to determine whether manifest injustice or a miscarriage of justice actually occurred." If a claim of plain error does not facially establish substantial grounds for believing manifest injustice or miscarriage of justice occurred, an appellate court should decline to review a claim of error under Rule 30.20. In this case, the appellate court obviously did not believe there to be an issue with the points Movant had made, and therefore Movant should be denied on this point.

ECF No. 8-8, pts. 80-81 (internal citations omitted). In affirming the PCR motion court's denial of Petitioner's claim, the appellate court held:

> The following additional facts are relevant to resolution of this claim. At trial, Movant testified Victim's wounds were self-inflicted. To combat this testimony, the prosecution presented the testimony of Doctor William Silliman ("Dr. Silliman"). Dr. Silliman was the trauma surgeon who treated Victim on the night of the attack. Dr. Silliman described Victim's wounds. He stated that the deep cut on Victim's thumb seemed to be defensive in nature and that he had "never in his experience seen anyone injure themselves in this way." Trial counsel objected to Dr. Silliman's testimony on this point, and the claim was preserved for appellate review, but appellate counsel did no raise the claim on direct appeal.
>
> In his amended motion, Movant claimed appellate counsel was ineffective for failing to raise a claim on appeal regarding Dr. Silliman's expert qualifications to testify that Victim's wounds were not self-inflicted. In the post-conviction case, movant presented an affidavit from appellate counsel. Appellate counsel stated she did not raise a point on appeal regarding Dr. Silliman's qualifications to opinion about the defensive nature of Victim's wounds because she did not believe the appellate court would find the argument persuasive.

15

For a movant to obtain relief that appellate counsel was ineffective, "strong grounds must exist showing that counsel failed to assert a claim of error which would have required reversal had it been asserted and which was so obvious from the record that a competent and effective lawyer would have recognized it and asserted it." However, "failing to raise a nonmeritorious claim does not convict counsel of being ineffective."

Movant claims a point on direct appeal challenging Dr. Silliman's qualifications would have required reversal as Dr. Silliman was not qualified to state Victim's wounds were defensive in nature because Dr. Silliman did not have formal training in forensic medicine. Movant is incorrect.

"In order to qualify as an expert, a witness must have knowledge or skill from education or experience that will aid the trier of fact." This knowledge or skill need not come from formal sources; "practical experience, rather than scientific study or formal training, may qualify a witness to testify as an expert." "Expert testimony should be admitted if the witness possesses 'some qualification.'" Beyond that, "the extent of an expert's experience or training in a particular field goes to the weight, not the admissibility, of the testimony."

. . .

Here, similarly, although Dr. Silliman was not a specialist in forensic medicine, he had extensive experience which qualified him to give an opinion regarding the cause of Victim's injuries. Dr. Silliman was a trauma surgeon, and he had treated about 100 patients with stabbing-type injuries over the course of his nine-year-long career. Each year he took "courses on what type of injury patters occur in different situations," and he observed many types of wounds during his surgical residency. Based on this experience, Dr. Silliman had more than "some qualification" to give the opinion that the injury to Victim's thumb was a defensive injury.

A point on appeal regarding Dr. Silliman's qualifications to render that opinion would have been without merit.

. . .

The motion court did not clearly err when it concluded appellate counsel was not ineffective. A claim challenging Dr. Silliman's testimony would not have required reversal because sufficient evidence was adduced to establish that Dr. Silliman was (1) qualified to give an opinion regarding the cause of Victim's wounds and (2) that testimony did not invade the province of the jury. Defendant's second point is denied.

ECF No. 8-11, pgs. 5-9.

The PCR motion court and the appellate court correctly applied federal law in denying Petitioner's claim for ineffective assistance of counsel. Appellate counsel does not need to raise every nonfrivolous claim on appeal; counsel can choose among the claims to maximize the likelihood of success on appeal. *Smith v. Robbins*, 528 U.S. 259, 288 (2000). A petitioner needs to show the ignored issues were clearly stronger than those presented to establish counsel was ineffective. *Id*. To establish the prejudice prong of *Strickland*, a petitioner must demonstrate a reasonable probability the claim would have succeeded on appeal. *Id.* at 285. Petitioner cannot establish either of these. He did not demonstrate his issue regarding Dr. Silliman's testimony was clearly stronger than the issues presented by his appellate counsel, nor did he demonstrate a reasonable probability the claim would have succeeded on appeal. The Court defers to the PCR appellate court's findings as to the admissibility of Dr. Silliman's testimony. *Schleeper v. Groose*, 36 F.3d 735, 737 (8th Cir. 1994) ("A federal court may not re-examine a state court's interpretation and application of state law."). The state courts' decisions are entitled to deference and Petitioner's claim will be denied.

## IV. CERTIFICATE OF APPEALABILITY

The Court finds Petitioner has not made a substantial showing of the denial of a constitutional right, as is required before a certificate of appealability can issue. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (explaining that a "substantial showing" is a showing the "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings"). Therefore, the Court shall not issue a certificate of appealability as to any claims raised in Petitioner's § 2254 Motion.

Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that Bradley L. Brown, II's *Pro Se* Petition under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* by a Person in State Custody [1] is **DENIED**. Petitioner Bradley L. Brown, II's Petition is **DISMISSED**, with prejudice.

So ordered this 31st of October, 2018.

_____
 E. RICHARD WEBBER
 SENIOR UNITED STATES DISTRICT JUDGE